We call the case of Grammer v. John J. Kane Regional Centers. May it please the Court, my name is Aaron Ryan, and I represent the appellant, Sarah Grammer, in this matter, and I would respectfully request that I may reserve 3 minutes for rebuttal. This case is a nursing home case, as this Court is well aware, against a county owned and operated nursing home. This Court has already held that Section 1396 of the Medicaid Act confers rights which are enforceable under Section 1983. The specific issue in this case is whether the provisions of that Act impose requirements only upon states in their capacities as administrators of the Medicaid program, or if it also imposes requirements upon the state. Now, we believe that if you look at the Act, there are two clear sets of requirements. There is one set of requirements that are clearly imposed upon the states as administrators, and there is another set of requirements that are clearly imposed upon participating homes. Let me begin by asking you what I suppose could be construed as a question of legal policy, but is not the position that you urge upon us one that would completely federalize malpractice cases that occur in nursing homes that are operated by state and local governments? To some extent, yes. Well, to what extent would it not? To the extent that those nursing homes did not participate in the Medicaid program. But once they choose to participate in the federal Medicaid program, then they're bound to obey by the Medicaid regulation. All right. I think you've certainly answered my first question. My second question is, your burden, if you will, here, is it not, is to demonstrate to us that there has been nothing short of an unambiguously conferred right laid down in those sections of the Medicaid Act upon which you are? Yes. That is our burden. Will you take us through the language and tell us where in those specific statutes, sections of the statute, that unambiguously conferred right to participate in the Medicaid program, an individual action against the nursing home entity exists? I guess I would say the analysis is whether there's an unambiguously conferred right. That's precisely the terminology I asked. Well, I guess to an individual action, I would be afraid that that would somehow take us into... No, no, no. I'm not eliding into the private right of action jurisprudence. As relevant as that may be to the analysis given the language of Gonzaga. But I'm asking you what I think Gonzaga and the Supreme Court requires of us, and that is to go to the text itself and find in that text where the unambiguously conferred right is. As the court's aware, we're talking about a number of provisions, so I hope you bear with me. I brought a little cheat sheet. We are all dealing with the same sections and the same language, and we're all going to have to go in that same direction. Okay. When we look at these, Your Honor, I would like to make sure we do so in the context of this court's decision in Sabree. And when Sabree looked at the... Yes, but Sabree did not decide these sections. I agree. That's why, as important as Sabree is, I didn't ask you about Sabree, of which the panel is well aware, I'm asking you about these specific sections. Okay. I guess it was the language from Sabree that says, a state must. And that's where I draw a parallel between those provisions and these provisions. If you look at section 42 U.S.C. 1396RB1A, it says, a nursing facility must care for its residents. All right. That smacks to me of language of obligation. Yes, I agree. It absolutely is. It's mandatory rather than... Where is the language of unambiguously conferred right as opposed to obligation? Well, I think when you look at the unambiguously conferred right, you have to look at who the intended beneficiary is. Is there an intended beneficiary of the... The status as beneficiary isn't enough, is it? Well, I think it's not... Explicitly it's not enough. It's not enough to be within the zone of benefit. It is one of the elements to be a specific intended beneficiary. To be without more in the zone of benefit. Yes, correct. And where's the more here? The beneficiaries here are the exact same beneficiaries that you have in Sabree. It's the Medicaid participants. And, I mean, certainly if we start parsing the language, some of these provisions are absolutely stronger than others. When you look at them as a whole, I mean, there are resident rights sections in here, and clearly those have an intended beneficiary and were intended to confer a federal right. Well, take a second to the language. Okay. 42 U.S.C. 1396RB1A. A nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance and enhancement of the quality of life of each resident. Now, when you apply the Glessing-Gonzaga standard to that section, which admittedly is one of the more general of our sections at issue here, it meets all the requirements. It was intended to benefit the plaintiff. The rights asserted are not so vague and amorphous, and we know that because there are specific penalty provisions contained in 1396RH, and nursing homes can be penalized for failure to comply with these requirements. Well, how does that help you? How does the existence in the statute of a specific remedy for violation of these general obligations help your position and suggest that there is some congressional intent to unambiguously confer rights on individual claimants? If anything, doesn't that cut against your argument? No. No, I don't think so whatsoever. The reason I brought that up was to illustrate that these are specific enough that both the federal and the state governments have the right to penalize nursing homes for noncompliance. And I think we go back again to when we talk about the creation of rights, the unambiguous creation of rights, who was the clear, is there a clear intended beneficiary of this statutory provision? And I would say yes. It's the Medicaid participant, just as it was in Sabree. Why is that any different than the terms of institutional policy and practice, like the FERPA provisions that were at issue in Gonzaga? Well, I guess I would say because of the nature of the clearly intended beneficiary. You know, again, much like Sabree. That's putting the rabbit in the hat, isn't it? Where is the clear intent? I think you have to look at the mandatory nature of the language and what it's intended to accomplish. And it's mandatory upon the states, just like it was in Sabree. So we should read into the presence of mandatory language directed to a governmental entity some explicit conferral of individual rights? I think that that's definitely one of the things you look at. Under Gonzaga, under this court's decision in Sabree, I think that the mandatory rather than precatory nature of the language is one of the factors that you use in reaching this determination. And if it pleases the court, I might like to look at some of these other provisions as well, which maybe illustrate the point even better. 42 U.S.C. 1396R1A subsection 2 and 1D, requirements relating to residence rights. I mean, here we see the term right actually used. General rights, specified rights, the right to be free from restraints, the right to be free from the use of psychopharmacological drugs. Those are clear rights. Those quote rights weren't violated in this case? Yes, they absolutely were. That's one of our major contentions in the underlying case. If you look at our decedent, and she died as a result of developing horrendous acubitus ulcers, one of the factors which contributed, or at least were entitled to the opportunity to make this argument, is the fact that she was overly and excessively medicated. And if you look at the specific medications that she was given, they contribute to the type of lethargy and sedateness, which ultimately lead to the development of the acubitus ulcers. Meaning, she was so heavily sedated, she laid in the bed all day long. And I think maybe if we start with those provisions, I think those clearly address the court's concern. I mean, here we have Congress actually calling them rights. General rights and specific rights. We've got intended beneficiaries. We've got mandatory language. This meets every single element of the Blessing-Gonzaga test. Now, I guess some of the other provisions we're relying on don't use that term rights, but there's no requirement that the magic term rights be used. I think you look at the effect of the statutory provisions. And I think that's what this court did in Zabriskie. Look to the effect for what purpose? To determine whether or not... Look to the effect and not the text? Is that your argument? I think they can be one and the same, Your Honor. You look at the intended effect from the plain language of the text. And I think you have to do that in order to determine whether or not... Where does Gonzaga say anything about looking at the effect? Well, I think Gonzaga talks about intended beneficiary. And I think, I mean... Not being enough, yes. It recognizes it as not necessarily not being enough in and of itself, Your Honor, but it is one of the elements. I don't think Gonzaga does anything to eliminate that as one of the elements. And, again, I think that if you look at this court's decision in Zabriskie, they relied upon that particular element heavily. And these are the exact same beneficiaries. Is your lawsuit here basically one for medical malpractice against a caregiving facility? Is that basically what your clients are claiming, that their deceased was not treated properly by the medical center? Yes. Yes, I would agree with that. Although... Let me finish, Counsel, and then I'll talk. Is there not a remedy in the state courts in the Commonwealth for that? No, there is not. If we were not dealing with a government actor, which we are in this case, we could certainly bring a common law cause of action for negligence. And in doing so, as we routinely do... You have a wrongful death, too, don't you? Yes. As we routinely do in a situation like this, where the defendant home is a Medicaid beneficiary, we rely upon the violations of these federal provisions in the Medicaid Act to serve as a basis for not only the standard of care, which they indisputably do in the field, but also negligence per se for their violation. You know, unfortunately... Well, wouldn't that be what your expert witness would testify on if you were trying it in the common police court? He would bring the whiz-bang in from the medical school, and he would testify to the jury that what was provided by the defendant here fell below the standard of care that was indicated for this type of patient? Sure, absolutely. And we're not trying to hide what we're doing here. It's clear that what we have here is, I don't want to call it unique, but a fairly rare situation where you have a defendant who's participating in the federal program bound by the federal restrictions and regulations, yet immune to suit. Through the assertion of sovereign immunity. Now, we can attempt to proceed against this individual because they chose to participate in that federal program. And that federal program sets forth very specific requirements intended to benefit individuals such as our plaintiff, and they failed to comply with it. And that's why we believe we have a viable Section 1983 action against them. Thank you. Thank you, counsel. We'll have you back on rebuttal. Is it Mr. Lettrick? That's correct, Your Honor. May it please the Court, my name is Michael Lettrick. I'm here on behalf of the appellee, the John McCain Regional Center. Is the plaintiff here completely without remedy if you prevail and we affirm the district court? I think it depends on the specific nature of what's being alleged, Your Honor. Certainly, as counsel indicated, this is what is in effect in negligence case. And certainly, there are immunities available to government actors in Pennsylvania State Court. If you are a state actor, you've got sovereign immunity. In this particular instance, it would be governmental immunity under the Pennsylvania Tort Claims Act. And certainly, there are restrictions on what types of negligence claims could be brought against an actor in state court under those sorts of situations. It would not apply, obviously, if there was an allegation that a nursing home would have failed to exercise proper care over real property or personal property or engage in intentional tort or engage in some sort of conduct of that nature. As to whether or not medical malpractice would fit into one of the exceptions to state immunity, I would say it probably is not. But that seems to me that's more of an issue for the state court to deal with as opposed to whether or not Congress intended this national lot to somehow or another. So you are doubtful, then, that the plaintiff here would have any remedy? I think it's entirely possible, Your Honor, yes. I think that that is possible. But I think that's an issue for what is really effectively a negligence case or negligence per se case for something to be dealt with by the Pennsylvania State Courts or through the immunities set up by the state legislature as opposed to when Congress created this federal spending legislation, which this is part of the Medicaid Act, it is. I don't think that's what was being envisioned by Congress in this particular instance. I don't think they created any individually, unambiguously conferred any individually enforceable rights. At best, these types of statutory sections are talking more in terms of obligation. Well, let's go to what I believe was the last section your adversary focused on. That was Section 1396R, I think there's multiple subsections, C1A, small 2, C1D. In any event, the section that made reference to promoting the rights of each resident. Isn't that more explicit than really all the other sections upon which you rely? I would say that that's a fair statement, Your Honor. Quite a few of these sections that are cited in both of the appellant and appellee's briefs are very much purely obligation. Now, that particular one, it's referring to the obligation. Well, there's still language of obligation in that section. It begins, a nursing facility must protect. But what the facility must protect and promote are the rights of each resident. That seems to me to be language at least somewhat different from the language in all or most of these other sections. I would agree that that's closer to the mark, Your Honor. It certainly is. But I think when you look at these sections as a whole, they're talking in terms of obligation of what the state must do in terms of requiring their nursing homes to do in order to receive federal funds. Why should we look at the full statute? We have what Judge Smith pointed out, questioned your colleague about, is a right to be free. If only that provision were violated, would not we have a situation in which a motion to dismiss under 12b-6 could be effectively challenged if he pleads, as he says he did, that it was done for the convenience of the caregiver? I don't think so, Your Honor. The reason being because, once again, it's talking about obligation. A nursing home must respect these particular rights as opposed to, I mean, it seems like that's what it's really talking about. When I say that one needs to look at the overall structure, it's talking about a nursing home must do this, a nursing home must do that. Those are obligations that a state must require their nursing homes to do in order to receive the federal funds. So I think that while that may be a little bit closer towards the mark in terms of stating that there are certain rights to be free of chemical restraints, for example, I think when you look at all of them talking about what a nursing home must do, we're talking about obligation of what the state must require a nursing home to do as opposed to creating individually enforceable rights through a Section 1983 claim in federal court. That would be more akin, in my mind, to something that should be brought forward as a negligence case in state court. Okay. Mr. Electric, your adversary argued our SABRE precedent,  individually enforceable rights. How and why should we distinguish SABRE from this case in these provisions? I think for a couple of reasons, Your Honor. Most importantly, in terms of what SABRE does, what Roland does, and these other cases in which claims were permitted to go forward with Section 1983 cases, what they were permitted to do was to file for injunctive action to require the state to provide the services that it agreed to provide whenever it agreed with the Department of Health and Human Services to accept its Medicaid funds. Are you suggesting that the difference between injunctive relief and money damage is about to have some significance? I think in some respects it does, Your Honor. How? The distinction would be… I mean, for purposes of Section 1983, what's the difference? I believe the distinction would be this. If you look at sort of the structure of the statutes in question, the agreement is if a state will provide care for injured persons and they will require their nursing homes to behave in certain manners, then the federal government will agree to provide funds to pay for that care. What those cases like SABRE, like Roland, like Clark do are they permit where a class of beneficiaries believes that they are not getting that which the state promised to do. The injunctive relief allows them to bring that to the court's attention and allow the court to address that situation as to whether or not they are receiving what they're supposed to be receiving. And I think that's really what was at issue in SABRE, Roland, Clark, and all the other cases in which they permitted 1983 cases to go forward. It seems to me that's a different issue than whether or not this creates what is effectively a federal personal injury claim for aggrieved nursing home residents in federal court. Who was sued in SABRE? In SABRE, I believe it was the head of the Department of Public Welfare who was responsible for administering the program. And hasn't that really been the case that is, isn't that really the class of defendants we have seen in these cases, not only in SABRE, but in several in the other circuits as well? That's exactly correct. This, by which I mean the Medicaid program, is effectively a program of cooperative federalism, isn't it? That's correct. Between the United States and the states. And so if you analogize that relationship as essentially a contractual relationship between the Congress on behalf of the United States and the states, should that matter? And should that kind of agreement between those parties have some impact on our analysis here? I think it does, Your Honor. That's entirely the point. In footnote two of the Pele's brief, I quote a section that was put into, I believe it was the Blessing case, by Judge Scalia who was just writing separately to sort of elucidate this principle. And he was saying exactly that, that this is almost like a contractual arrangement between the federal government and the states, that if the federal government agrees, or the states agree to provide care under certain criteria, then the federal government will agree to pay for it. And he described the people who receive the benefits of that as effectively almost like a third-party beneficiary. That's why he said that it's so difficult to find an instance under the Medicaid Act where it would create a personal right of action of this type, or excuse me, more like an individual right would be enforceable via Section 1983. So I think that's the primary distinction between Sabree and Roland and Clark and the other cases in which the permitted 1983 actions go forward and this particular instance. Our analysis in Sabree depended to a great extent on the continuing viability of both right and wild. I believe that you're right. Nothing has changed. There's still good law, right? Yes, I believe there's still good law. Still good law as of Gonzaga, and nothing has happened since Gonzaga to change that equation. I did some additional research over the last few days to see if I found anything that had changed, and I have not. It doesn't appear that anything has changed, either in the Third Circuit or at the Supreme Court level. What were the rights that were at stake in right and in wild? Off the top of my head, I do not recall, Your Honor. I'll be perfectly honest with you. But I believe the principle is that what we're dealing with here is obligation, and I don't believe what Congress' intent was here, which is really sort of the pole star by which we should be guided at, was to create... In right, was there some relationship arising out of a landlord-tenant type arrangement that was at stake? Am I recalling the correct facts to the correct case? I believe one of those two was dealing with that issue, Your Honor. Right was against the city of Roanoke redevelopment authority and involved the Brooke Amendment, which dealt with certain, I think, that, in fact, had some kind of economic specificity to them. Should that matter for purposes of our analysis here that you had in that relationship really some kind of calculable economic benefit, which it would seem to me, without looking at it further, is lacking in that regard. I'm not sure if I understand your question, Your Honor. You're referring to an economic benefit to be received by which... To which there was claimed entitlement of the Brooke Amendment. If you don't recall the specific facts, it probably isn't helpful perhaps. I apologize. To be perfectly honest with you... But similarly, it would seem to me, in Wilder, the court was dealing with a reimbursement calculation for health care providers. Again, a calculable economic benefit. And I'm just musing as to whether or not the existence of a specific and calculable economic benefit ought to matter here as opposed to the kind of claim that would seem to be at stake if the plaintiff's claim here were permitted to go forward in this essentially malpractice case. That's an interesting argument, Your Honor. It was something that I had not thought of. I mostly thought of it in terms of just trying to plug the facts of this thing into Gonzaga and the related cases and compare it with Sabree and Rowland and other cases in which claims have been permitted to go forward. It just seemed to me that the cases in which they were permitted to go forward were of a very different kind than this particular case because what they were trying to do was effectively get injunctive relief off the state to have them live up to their obligations to the federal government when they agreed to accept Medicaid funds. So I don't believe that what Congress intended here was what is effectively an end around state court immunity and what would otherwise be a negligence case. I thank you, Counselor. Thank you, Ryan. Mr. Ryan? I let you go first in presenting yourself and stating your name because I didn't get Ryan out of R-I-H-N and I wasn't going to try until you told me. It's a very unusual pronunciation, Your Honor. It's effectively pronounced like R-Y-A-N. If I could, I'm very glad that the appellee brought up the Rowland case. I'd like to talk about the Rowland case along with the Sabree case and even, Your Honor, with the Wilder case. And I'd like to take a look at the language that's used there. There seems to be some concern on the court's part that perhaps the nature of the language, since it's phrased as an obligation upon the states themselves, somehow precludes this from being the type of language that unambiguously confers a right. I don't know that it precludes it, but I'm interested to hear from you just how it does factor into your position on the explicit nature or the expressed nature, the unambiguous conferral of right nature. I think that it's a good thing for our position. In fact, it's required for our position that this be a mandatory obligation, that it be mandatory rather than a precatory. But most important, if you look at the provisions at issue in Sabree, if you look at the provisions at issue in Rowland, those are both phrased in a state must. It has the same type of language as a nursing home must that concerns the court in this instance, language which I think the court is concerned might appear to be more directed at the state or the nursing home than the beneficiary. But what I'd like to point to your attention is in both of those cases, the Third Circuit in Sabree and the First Circuit in Rowland found that those statutory provisions created unambiguously conferred rights. Unfortunately, I don't have the text of the Wilder opinion before me, but I think the Wilder opinion as well, and this is the United States Supreme Court opinion, talks about a state's obligation. But from that obligation, you confer an intended beneficiary. So I guess what I would say is the appellee has failed to distinguish the nature of the language used in Sabree from the nature of the language used here in this instance case. In fact, it's the exact same language. A state must do X to provide for its Medicaid beneficiaries. A nursing home must do X in order to care for Medicaid beneficiaries. It's the exact same language. I would also like to point out the obviousness of the fact that you typically see states or state officials as defendants. Let me just stop you, though, on Sabree, if I might, because I think it bears emphasis that the emphasis, by way of italics, in our opinion in Sabree, was to highlight, must provide that all individuals, by italics, such assistance shall be furnished with reasonable promptness to all eligible individuals. That language is in italics. That's as to 1396.888. As to 1396.8810, provide for making medical assistance available to all individuals, italics. So, in fairness, the Sabree panel was very clearly emphasizing the language of individuality in the relevant portions of the Medicaid system, not the obligation on the state. Well, I think there's some parallels. Which they did not italicize. I think there's some parallels here as well, Your Honor. For instance, you look at 42 USC 1396 RB3A, residence assessments, which is, again, a major element of our underlying action. A nursing facility must conduct a comprehensive, accurate, standardized, reproducible assessment of each residence. Each residence. That's very similar language to all individuals. We also have this portion of these provisions talking about the beneficiaries, just like you had in Sabree. Dietary services that assure the meals meet the daily nutritional and special dietary needs of each residence. You know, again, language that's focusing on the intended beneficiary, the resident. All right. I guess we've kind of gone a bit beyond the time, Mr. Ryan. Thank you for the Court's time. We thank you very much. We thank Mr. Leffert as well for your helpful arguments in this very difficult case, very interesting case. And we'll take the matter under advice. Thank you. Thank you.